## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | |
|---|---|
| **KATHERINE Y. JENKINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Case No. 2:11CV28JCH/MLM** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Michael

J. Astrue ("Defendant") partially denying the application of Katherine Y. Jenkins ("Plaintiff") for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and

for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1382 et seq.

Plaintiff filed a brief in support of the Complaint. Doc.20. Defendant filed a brief in support of the

Answer. Doc. 20. This matter was referred to the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(b). Doc. 12.

## II.
## PROCEDURAL HISTORY

Plaintiff filed her applications for benefits July 12, 2006, alleging a disability onset date of

March 1, 2006. Tr. 108-17. On August 17, 2006, her applications were denied and she requested

a hearing before an Administrative Law Judge ("ALJ"). Tr. 70-74, 77. After a hearing, the ALJ

found that Plaintiff was not disabled through the date of the decision, March 27, 2009. Tr. 10-21, 22-

66. The Appeals Council denied Plaintiff's Request for Review on May 21, 2009. Tr. 1-5. As such,

the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

2

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.
Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir.
2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals
held:

> [t]he concept of substantial evidence is something less than the weight of the
> evidence and it allows for the possibility of drawing two inconsistent
> conclusions, thus it embodies a zone of choice within which the Secretary may
> decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely
because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d
1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of
the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de
novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v.
Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).
Instead, the district court must simply determine whether the quantity and quality of evidence is
enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v.
Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir.
2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen,
830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992)
(holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial
evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject
to reversal merely because substantial evidence may also support an opposite conclusion or because

4

the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) Findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

5

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart,

6

361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the

7

plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

# III.
# DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

At the hearing, Plaintiff, who was thirty-nine years old on her alleged onset date, testified that she was 5'4" tall and weighed 270 pounds; that she had a high school education; that she was unable to perform heavy lifting required by her past jobs; that she had difficulty walking and standing; that she needed to change positions every ten to fifteen minutes; that she had difficulty with her intestinal tract and needed to be near a restroom at all times; that her pain interfered with sleep; and that she had fatigue, loss of energy, difficulty concentrating, anxiety, depression, and difficulty being around other people.

The ALJ found that Plaintiff met the insured status requirements since December 31, 2009; that she had not engaged in substantial gainful activity since her alleged onset date of March 1, 2006; that Plaintiff had the severe impairments of obesity, degenerative disc disease of the lumbar spine, and depressive disorder; that, based on the evidence of record, Plaintiff had the RFC for light work with the exception that she had the non-exertional limitations of needing a lower stress work environment, jobs which would not require her to understand, remember, and carry out more than simple

8

instructions, and a work environment where she could alternate between sitting/standing every thirty to forty-five minutes; that, pursuant to the testimony of a VE, Plaintiff could perform her past relevant work as a cashier; and that, therefore, Plaintiff was not disabled.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed "to follow the *de minimus* standard at Step two of the sequential evaluation process by failing to acknowledge all of Plaintiff's severe physical impairment[s]" despite evidence from treating and examining doctors documenting severe medical conditions," and because the ALJ failed to give greater weight to Plaintiff's treating and examining sources when determining her RFC.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996);

9

Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's medical records in regard to her knees and found that she "appear[ed] to exaggerate reported problems with her knees" and that she did not have a severe impairment of either knee. Tr. 19. In particular, the ALJ considered that Plaintiff had normal motion of the hips, knees, and ankles upon examination by Charles Ash, M.D.; that September 26, 2008 x-rays showed "normal results with no evidence of arthritic change"; and that an MRI of Plaintiff's right knee, completed on October 8, 2008, showed normal results. Tr. 19. The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

Second, the ALJ considered Plaintiff's earnings record and that, despite her testifying that she

10

had mental-health related symptoms since 1989, Plaintiff had been able to work in "many intervening years from 1989-2006." Tr. 19. The ALJ found that because Plaintiff worked with her impairment for a number of years without any worsening of her condition, she cannot claim it is disabling. Tr. 19. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years."). Further, working after the onset of an impairment is evidence of an ability to work. Goff, 421 F.3d. 793; Goswell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001). Section 404.1574(a)(1) further states that work which a claimant is forced to stop or reduce below the substantial gainful activity level after a short time because of his impairment is generally considered an unsuccessful work attempt. "[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability." Naber v. Shalala, 22 F.3d 186, 189 (8th Cir.1994). As such, the court finds that the ALJ properly considered that Plaintiff worked during the relevant period and that the ALJ's decision, in this regard, is based on substantial evidence.

Third, the ALJ considered, in regard to Plaintiff's mental health-related symptoms, that she

11

had never been hospitalized for psychiatric reasons. Tr. 19. Further, the ALJ considered that when Plaintiff presented at Pershing Memorial Hospital, on July 31, 2008, reporting depressive symptoms, she refused admission. Tr. 17. Plaintiff told David M. Van Pelt, Psy.D., in December 2008, that she attended one session for family counseling and one session for individual counseling, "but could not recall the dates." Tr. 410. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322 Further, conservative treatment and no surgery are consistent with discrediting a claimant's allegation of disabling pain. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). The court finds that the ALJ's decision, in this regard, is based on substantial evidence.

Fourth, the ALJ considered that "[t]hose who have examined [Plaintiff] have not identified any underlying basis for pain" at the level of severity alleged by Plaintiff and that "comprehensive medical testing" did not indicate such severity. Tr. 18. A factor to be considered by an ALJ is the absence of objective medical evidence to support a claimant's complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008)). The court finds that the ALJ's decision in this regard is supported by substantial evidence.

Fifth, the ALJ considered that Plaintiff was advised to take over-the-counter anti-inflammatories and do stretching exercises for her hip problems. The ALJ also considered that Plaintiff required no other treatment for this condition other than pain medication, suggesting that her hip pain resolved with an injection. Tr. 18. If an impairment can be controlled through treatment or

12

medication, it cannot be considered disabling. Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). Further, where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Benskin, 830 F.2d at 884 (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain). The court finds that the ALJ's decision, in this regard, is based on substantial evidence.

Sixth, the ALJ considered that evidence suggested that Plaintiff "ha[d] a tendency to exaggerate symptoms." In particular, the ALJ considered that results from an Minnesota Multiphasic Personality Inventory - 2 Restructured Form ("MMPI-2RF"), administered by Dr. Van Pelt, were considered invalid because Plaintiff "provided a less than accurate account of her present psychological condition." Also, in this regard, Plaintiff's responses to "items regarding medical conditions [] tend[ed] to reflect exaggeration" and there was "over-reporting of somatic and/or cognitive symptoms." Tr. 20. Indeed, Dr. Van Pelt explained that Plaintiff's "level of infrequent responding [was] uncommon even in individuals with genuine, severe psychological difficulties who report creditable symptoms. Scores on the substantive scales should not be interpreted." Tr. 411. Dr. Van Pelt also stated that she could not evaluate the Restructured Clinical scales, Psy-5, and other relevant scale evaluations because of Plaintiff's "tendency to over-report psychopathology." Tr. 411. When an examining physician express doubts about the validity of a claimant's complaints, this is a factor which discounts the claimant's credibility. Edwards, 809 F.2d at 508. See also Baker v. Barnhart, 457 F.3d 882, 892-93 (8th Cir. 2006) (holding that the ALJ properly discounted the claimant's complaints of pain upon considering reports that the claimant exaggerated his symptoms during an examination); Jones v. Callahan, 122 F.3d 1148, 1151-52 (8th Cir. 1997) (holding that

13

exaggeration of symptoms is a factor to be weighed in evaluating subjective complaints of pain); Russell v. Sec'y of Health, Ed. & Welfare, 540 F.2d 353, 357 (8th Cir. 1976) (holding that where doctors reported that the claimant was exaggerating her ailments and was uncooperative, the record did not establish the requisite degree of certainty that the claimant was disabled). As such, the court finds that, pursuant to the opinion of Dr. Van Pelt, the ALJ's considering that Plaintiff exaggerated her symptoms is based on substantial evidence.

Seventh, the ALJ considered Plaintiff's daily activities. In particular, the ALJ considered that Plaintiff testified that she lived with her three children, ages five to fourteen; that she could grocery shop, with her children's help; and that she was able to drive. The ALJ also considered that Plaintiff reported, in a July 27, 2006 Daily Function Report, that her children and her mother did most of the yard work; that she could clean, although it was painful to do so; that she did laundry, with help; and that she mowed using a riding lawn mower. The ALJ noted that Plaintiff's description of her daily activities was inconsistent. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin,

14

830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins, 177 F.3d at 692). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Eighth, the ALJ considered that the record did not reflect that the limitations which Plaintiff said she had were imposed by her physicians; rather, the ALJ concluded that, to the extent Plaintiff led a sedentary lifestyle, she did so by choice. A claimant's limitation which is self-imposed rather than a medical necessity is a basis upon which an ALJ may discredit a claimant's alleged limitation. See Blakeman v. Astrue, 509 F.3d 878, 882 (8th Cir. 2007) ("The issue is not whether [the claimant] was credible in testifying that he naps each weekday afternoon he is not working. The issue is whether his heart condition compels him to nap each afternoon."); Brunston v. Shalala, 945 F. Supp. 198, 202 (W.D. Mo. 1996 ("Plaintiff also testified that she spent part of the day lying down; however, no physician stated that such a need existed. If plaintiff was not lying down out of medical necessity, then that indicates that she was lying down by choice."). The court finds that the ALJ's decision, in this regard, is based on substantial evidence.

Ninth, the ALJ considered that Plaintiff was prescribed Effexor for depressive symptoms and that, on February 14, 2007, it was reported that Plaintiff's "mood was better" and that Effexor "was helping." The court notes that Dr. Van Pelt reported on December 20, 2008, that Plaintiff said that

15

her anxiety and depression were treated with medications and that "[m]ost of the time" the medication helped. Tr. 409. As stated above, conditions which can be controlled with medication are not disabling. See Kisling, 105 F.3d at 1257. As such, the court finds that the ALJ's decision, in this regard, is based on substantial evidence.

Tenth, the court notes, in regard to Plaintiff's diagnosis of chronic obstructive pulmonary disease ("COPD"), it was reported on August 23, 2009, that it was related to her smoking. Tr. 448. While Plaintiff was hospitalized for chronic COPD from August 27 to August 31, 2009, it was reported that she was a "chronic smoker" and that the plan for her rehabilitation included COPD education and smoking cessation education. Tr. 420-22. On October 19, 2009, it was reported that Plaintiff was a smoker. Tr. 484. On November 2, 2009, when Plaintiff was seen for COPD, it was reported that Plaintiff continued to smoke and that therapy had helped this condition. Tr. 486. A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (holding that an ALJ can discredit subjective complaints of pain based on claimant's failure to follow prescribed course of treatment). Additionally, subjective complaints of pain may be discredited where a claimant ceases to stop smoking upon a doctor's advice. See Wheeler v. Apfel, 224, F.3d 891, 895 (8th Cir. 1996) (citing Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997)) (holding that impairments which are controllable or amendable to treatment including certain respiratory problems, do no support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application for benefits). The court finds that the ALJ's decision, in this regard, is based on substantial evidence.

In conclusion, the court finds that the ALJ's credibility determination is based on substantial

16

evidence and that it is consistent with the Regulations and case law.

**B.      The Severity of Plaintiff's Mental Impairments:**

As stated above, the ALJ found that Plaintiff had the severe impairments of obesity,
degenerative disc disease of the lumbar spine, and depressive disorder. Plaintiff contends that the
ALJ did not address Plaintiff's mental impairments other than her depression, including anxiety, low
average intellectual functioning, and impaired concentration and that the record reflects that Plaintiff's
other mental conditions met the standard for establishing that they were severe. Plaintiff contends
that, although the ALJ considered Dr. Van Pelt's report, records from other sources establish that
these additional mental impairments were severe. Plaintiff also argues that this matter should be
remanded because she met her burden at Step 2 to establish that she has a severe impairment.

As stated above, at Step 2 of the sequential analysis an ALJ is required to determine if a
claimant has a severe impairment or combination of impairments. "The severity Regulation adopts
a standard for determining the threshold level of severity: the impairment must be one that
'significantly limits your physical or mental ability to do basic work activities.'" Bowen v. Yuckert,
482 U.S. 137, 153 n.11 (1987) (quoting 20 C.F.R. § 404.1520(c) (1986)). An impairment or
combination of impairments are not severe if they are so slight that it is unlikely that the claimant
would be found disabled even if his age, education, and experience were taken into consideration.
Id. at 153 ("The severity regulation increases the efficiency and reliability of the evaluation process
by identifying at an early stage those claimants whose medical impairments are so slight that it is
unlikely they would be found to be disabled even if their age, education, and experience were taken
into account."). Moreover, "'[a]n impairment imposes significant limitations when its effect on a
claimant's ability to perform basic work is more than slight or minimal.'" Warren v. Shalala, 29 F.3d

17

1287, 1291 (8th Cir. 1994) (quoting Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986)). See also

Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that if a claimant's impairments would

have no more than a minimal effect on his ability to work, they do not satisfy the requirement of step

two). 20 C.F.R. § 404.1521(b) defines basic work activities as follows:

> (b) Basic work activities. When we talk about basic work activities, we mean the
> abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,    reaching,
> carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations;
> and
> (6) Dealing with changes in a routine work setting.

The ALJ did find, at Step 2, that Plaintiff met her burden to proceed with the disability

analysis as the ALJ did find that Plaintiff had severe impairments. As such, Plaintiff's argument that

this matter should be remanded because the ALJ erred at Step 2 is without merit. To the extent

Plaintiff's brief suggests that the ALJ should have found her mental impairments, other than

depression, severe, the court will address this argument. Additionally, to the extent Plaintiff contends

that the ALJ should have found her disabled based on any one of her mental impairments, the court

will address this argument.

First, the ALJ considered, as stated above, that on February 14, 2007, it was reported that

Plaintiff's mood was better since she was prescribed Effexor. Also, on this date, the ALJ noted that

Plaintiff's depression was assessed as stable. Second, as discussed above, the ALJ considered that

Plaintiff had not been hospitalized for depressive symptoms. Likewise, the record does not reflect

18

that she was hospitalized for any other mental impairment.

Additionally, in regard to Plaintiff's alleged mental conditions, the ALJ considered that when Plaintiff presented to Pershing Memorial Hospital on July 31, 2008, she denied suicidal ideation, although she had been brought to the emergency room for allegedly expressing suicidal thoughts. Tr. 17, 322. Records of this visit also reflect that Plaintiff denied wanting to hurt herself and stated that she said she wanted her medication adjusted; that she was "under multiple stressors"; and that she may want outpatient counseling. Tr. 322.     To the extent that Plaintiff presented because of "stressors," situational depression is not disabling. See Dunahoo, 241 F.3d at 1039-40 (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Additionally, the failure to attend counseling and a claimant's daily activities can support a conclusion that depression is situational due to temporary circumstances. See id. at 1039. As stated above, Plaintiff told Dr. Van Pelt that she may have attended counseling on two occasions. Also, a Social Service Note of July 31, 2008, reflects that "on-site assessment" was declined at that time. Tr. 322. A Mental Health Initial Assessment reflects that Plaintiff's appearance, self perception, motor activity, and affect were appropriate; that her mood was anxious; that her speech was normal; that her orientation, memory, abstraction, judgment, insight, perception, thought process, and thought content were intact; that her intelligence estimate was average; that she had no current thoughts of suicidal ideation; that she was cooperative; that her overall health was "fine"; that she did not have runaway thoughts/behavior; and that she was "strong, willing and able to assist." [1]Tr. 391-92.

---

[1]      The record does not clearly reflect the date upon which this Assessment was completed although its placement in the transcript suggests it was completed on July 31, 2008.

19

Records reflect that Plaintiff left a message at 8:15 a.m. on August 1, 2008, with a social worker, in which message Plaintiff said that she "ha[d] to take a friend to court" that day and would call later in the day. Records do reflect that Plaintiff was seen on that same date for follow-up from her emergency room. Records of this visit reflect that Plaintiff thought an increase in her medication would help. Tr. 324.

In a Medical Source Statement, dated October 31, 2008, Nurse Practitioner Anna Parsonson, did not include any mental impairments among Plaintiff's major diagnosis. She did state, however, that Plaintiff had depression and anxiety which contributed to Plaintiff's limitations. Significantly, Nurse Parsonson stated that Plaintiff was "[c]apable of low stress jobs." Tr. 400. Although, as found below, Nurse Parsonson is not an acceptable medical source for purposes of Social Security Disability, Nurse Parsonson's opinion may be considered in regard to the severity of Plaintiff's impairments and how they affected Plaintiff's ability to work. See 20 C.F.R. §§ 404.1513(d), 416.913(d).

LaRee Harvey, M.Ed., reported that she was requested to evaluate Plaintiff because of doctor's concerns regarding her depression; that Plaintiff had said she had been "crying and sleeping and little else for 3 days and ha[d] contemplated suicide during that time"; that Plaintiff said her boyfriend had an ex-girlfriend who was claiming to be pregnant by Plaintiff's boyfriend; and that Plaintiff said she was "depressed because she [did not] know who to trust."[2] Tr. 330.

The ALJ also considered, in great detail, the report of Dr. Van Pelt, who conducted a consultive psychological evaluation of Plaintiff on January 10, 2009. The ALJ considered Plaintiff's subjective reporting to Dr. Van Pelt, concerning her anxiety attacks, depression, and pain. The ALJ

---

[2]     Ms. Harvey's notes are undated.

20

also considered, as discussed above, results of objective testing conducted by Dr. Van Pelt, which results Dr. Van Pelt found to be invalid based on Plaintiff's exaggeration. The ALJ further considered that Dr. Van Pelt estimated Plaintiff's intellectual functioning as a "low average"; that Dr. Van Pelt diagnosed Plaintiff with dysthymic disorder and pain disorder associated with both psychological factors and a general medical condition; that Dr. Van Pelt assigned Plaintiff a global assessment of functioning ("GAF") of 60[3]; that a GAF of 51-60 indicates an individual has *moderate difficulty in social, occupational, or school functioning*; that Plaintiff was able to understand and remember simple to moderately complex instructions, and concentrate and persist on simple tasks during a normal workday; and that her ability to interact was limited to moderate contact with supervisors/co-

---

[3]      Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] ... reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.' " (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)) (alterations in original).

Although "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' ... GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy.")).

21

workers, and the general public. Tr. 18. As discussed above, the ALJ considered that Dr. Van Pelt found that Plaintiff provided a "less than accurate account of her present psychological condition" and that there was "over-reporting of somatic and/or cognitive symptoms." Tr. 20.

The court notes that Dr. Van Pelt reported that Plaintiff said her anxiety occurred "once to twice a month, but the depression, [] seem[ed] to happen everyday"; that the depression lasted five minutes and "sometimes longer"; that she had a depressed mood "for most of the day for more days th[a]n not, for at least two years"; and that she had suicidal ideation "three times a month." Tr. 409. Also, Dr. Van Pelt reported that Plaintiff's *attention and concentration* appeared to be *adequately functioning*; that her hygiene appeared normal and routine; that her psychomotor activity was calm and there was no evidence of impairment; that she was alert and her orientation was grossly intact; that she was able to repeat three objects after the examiner, recall two objects after a short delay, and two objects after a longer delay; that her *immediate memory, recall memory, and remote memory* were *adequately functioning*; that her eye contact was appropriate; that her attitude was co-operative and forthcoming; that her affect was occasionally tearful and, consistent and congruent with her stated mood, "fair"; that her speech was normal; that she correctly demonstrated how to salute, blow out a match, and brush her teeth; that she correctly identified objects; that her thought content was appropriate to the mood and circumstances; that there was no overt evidence of delusions or hallucinations; that her *intellectual ability* was considered *low average*; that her abstraction abilities were simple; that her *judgment* was *adequately functioning*; and that Plaintiff's impulse control was "fair." Tr. 412. Dr. Van Pelt concluded, in addition to what is stated above, that Plaintiff could *understand and remember simple to moderately complex instructions and concentrate and persist during a normal workday*; that she demonstrated a capacity to interact in limited contact to moderate

22

contact situations involving the general public and both work supervisors and co-workers; that she had the *ability to adapt to a simple to moderately demanding environment*; that she would have difficulty managing her own funds as she was unable to subtract $6.57 from $10.00; and that psychotherapeutic intervention "could greatly assist [Plaintiff] in dealing with her current stressors," "strengthen her coping resources," and "likely return her to a higher state of functioning." Tr. 413. The record does not reflect that Plaintiff sought such therapeutic intervention; that she was unable to afford such intervention; and/or that she sought and was denied assistance in this regard. Indeed, "a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits." Tome v. Schweiker, 724 F.2d 711, 713-714 (8th Cir. 1984) (citing 20 C.F.R. §§ 404.1518, 404.1530) (holding that ALJ's credibility determination was against the substantial weight of the evidence where the diabetic plaintiff did not follow her dietary and insulin regimen because she "lacked the financial resources and the discipline and education needed to understand and follow a strict dietary and insulin regimen")). Moreover, as discussed above, conditions which can be controlled by treatment are not disabling. See Kisling, 105 F.3d at 1257.

In conclusion, the court finds that the ALJ's determination that Plaintiff did not have severe mental limitations other than depression is supported by substantial evidence. Moreover, to the extent it can be said that Plaintiff had limitations in regard to anxiety and intellectual functioning, the ALJ took these limitations into consideration when determining Plaintiff's RFC as the ALJ found that Plaintiff needed a lower stress environment and was limited to jobs which would require her to understand, remember, and carry out simple instructions.

**B.     Weight Given to the Opinions of Anna Parsonson, FPN, Charles Ash, M.D., and Dr. Van Pelt:**

23

Plaintiff contends that the ALJ should have given greater weight to the opinions of Nurse Parsonson, Plaintiff's treating nurse, and Dr. Ash, an examining doctor, and less weight to the opinion of Dr. Van Pelt, a consulting and examining doctor.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source

24

presents relevant evidence, such as medical signs, in support of his or her opinion).

**1.   Nurse Parsonson:**

In a Medical Source Statement, dated October 31, 2008, Nurse Parsonson stated that she was a treating and an examining/evaluating source; that she saw Plaintiff on four occasions; that Plaintiff's major diagnosis were degenerative arthritis, spondylosis, osteoporosis and back and knee problems; that her prognosis was "fair"; that her impairments could be expected to last at least twelve months; that emotional or psychological factors contributed to Plaintiff's symptoms and limitations; that these psychological conditions included anxiety and depression; that Plaintiff's symptoms were severe enough to interfere with her attention and concentration constantly; that she was capable of only low stress jobs; that she could not walk any city blocks; that she could sit or stand ten minutes at a time; that, in an eight-hour workday Plaintiff could sit less than two hours total and stand/walk about two hours; that she would need to change positions at will; that she would need to lay down or recline or elevate her feet during a workday; that she would need to take unscheduled restroom breaks; that she could frequently carry less than ten pounds, occasionally carry ten pounds, and rarely carry twenty pounds; that she could rarely stoop, bend, kneel, crouch/squat, crawl or climb stairs and never climb ladders; that she could occasionally handle, grip, finger, and frequently reach and feel; and that she would be absent from work more than four days a month. Tr. 398-403.

First, Nurse Parsonson is a nurse practitioner. Nurse practitioners are not "acceptable medical source(s)" for purposes of 20 C.F.R. § 404.1513(a). Their opinions, however, may be considered as "other" medical sources. Id. at (d)(1). "In addition to evidence from the acceptable medical sources ... [an ALJ] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work. Other sources include, but are not

25

limited to--(1) Medical sources not listed ... nurse-practitioners ...and therapists." Id. Further, as stated by the Eighth Circuit in Lacroix v. Barnhart, 465 F.3d 881 (8th Cir. 2006), "[o]nly 'acceptable medical sources' can give [] medical opinions" for purposes of Social Security disability. As nurse practitioners are not physicians, psychologists, or other acceptable medical sources as defined by the Regulations, they are excluded from the list of acceptable medical sources. Id. However, as further explained by Lacroix:

> Therapists and nurse practitioners are specifically listed as "other" medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work. Id.§§ 404.1513(d)(1), 416.913(d)(1). ... See Raney, 396 F.3d at 1010 ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); Cf. Social Security Ruling 06-03p, 71 Fed. Reg. at 45,596 (stating that more weight may be given to the opinion of a medical source who is not an acceptable medical source if "he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.").

Thus, the ALJ was not required to give Nurse Parsonson's opinion controlling weight. Significantly, as stated above, Nurse Parsonson's opinion was that Plaintiff was capable of low stress jobs. To the extent Nurse Parsonson suggested that Plaintiff needed to alternative positions, the RFC which the ALJ assigned to Plaintiff took this into consideration, although not to the extent suggested by Nurse Parsonson. Thus, the ALJ's RFC determination did incorporate some of the limitations imposed by Nurse Parsonson. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself

26

is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions."). See also Martise v. Astrue, 641 F3d 909, 926 (8th Cir.2010) (quoting Ellis, 392 F.3d at 994).

Further, Nurse Parsonson's conclusions regarding Plaintiff's physical limitations are inconsistent with her own treatment notes. Leckenby v. Astrue, 487 F.3d at 632; Chamberlain, 47 F.3d at 1494. For example, Nurse Parsonson reported, on August 1, 2008, that physical examination showed Plaintiff was alert and in mild distress. She also did not make any checkmarks to indicate that Plaintiff had any problems with her back or extremities and she indicated that Plaintiff was oriented and had normal mood/affect. Tr. 321. On October 6, 2008, Nurse Parsonson reported that Plaintiff said her pain in her knees was eight on a ten point scale. Tr. 464. On October 10, 2009, Nurse Parsonson reported that Plaintiff was "attempting to get disability due to knee & low back pain" despite a negative knee MRI. Tr. 478. Also, on this date Nurse Parsonson indicated that Plaintiff did not have "difficulty walking" and that, pursuant to physical examination, Plaintiff was in "no acute distress." Tr. 478. In conclusion, the court finds that the ALJ gave proper weight to Nurse Parsonson's opinion and that the ALJ's decision, in this regard, is based on substantial evidence.

**2. Dr. Ash:**

In letter dated, December 10, 2008, Dr. Ash stated that he examined Plaintiff on that date; that Plaintiff smoked two packs of cigarettes a day; that she was 5'5" tall and weighed 270 pounds; that she *moved about satisfactorily* without a limp or list; that she squatted "10% normally"; that she had no difficulty arising from the chair, dressing, or undressing; that she had normal motion in her cervical spine and no tenderness or muscle spasm; that she had moderate tenderness in the lumbosacral region; and that, in the *upper extremities,* Plaintiff had *normal range of motion*, no

27

weakness, deformity, or atrophy, strong grip and pinch in both hands, and no sensory deficit. Dr. Ash further reported that, in the lower extremities, straight leg raising was "60 producing pain in the anterior knees and low back"; that Plaintiff's back was uncomfortable when she was recumbent; that her reflexes were equal and hyperactive at the knees and ankles; that she had *normal motion in the hips, knees, and ankles*; and that she had no sensory deficit. Dr. Ash's diagnosis was degenerative arthritis of the lumbar spine. He concluded, "based on objective findings," that Plaintiff could *stand and walk six hours and sit eight hours in a workday*; that she could lift ten pounds occasionally and no weight frequently; and that she did *not have any objective findings in the upper extremities or hands*. Tr. 405-406.

First, to the extent the ALJ did not give Dr. Ash's report controlling weight, Dr. Ash was an examining doctor and not a treating doctor. Second, the ALJ did consider Dr. Ash's report in detail. Tr. 17, 20. The RFC which he assigned to Plaintiff is consistent with Dr. Ash's report with the exception of the weight limitations that Dr. Ash imposed on Plaintiff. In this regard, the ALJ found that Plaintiff could walk or stand six hours in an eight-hour workday. Such capability is consistent with the light work which the ALJ found Plaintiff could perform. See Choate, 457 F.3d at 869-70.

Third, the ALJ discounted Dr. Ash's opinion that Plaintiff could only occasionally lift ten pounds and never lift more than that based on Dr. Ash's own objective findings, as set forth above. Tr. 20. Indeed, Dr. Ash reported, among other things, that Plaintiff's grip was "strong" in both hands and she had "no weakness." Tr. 406. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment).

Fourth, the ALJ discounted Dr. Ash's opinion based on objective findings of other doctors.

28

In this regard, a June 15, 2006 MRI showed that Plaintiff had no significant disc space height loss, bulge or protrusion; and that she had mild facet degenerative changes without significant neural foraminal narrowing at L4-L5 and L5-S1. Tr. 241. Further, Plaintiff had bilateral carpal tunnel release surgery on May 9, 2007. Tr. 372-73. When Plaintiff was seen for follow-up, on May 15, 2007, it was reported that Plaintiff's carpal tunnel was "getting better" and had "improved." Tr. 312. On January 30, 2008, Plaintiff said that she was having numbness off and on in her right hand. Nurse Parsonson reported that inspection of Plaintiff's upper extremities was normal, non-tender, and no edema was seen. Tr. 356. On September 26, 2008, Paul Williams, D.O., reported that x-rays of Plaintiff's left and right knees showed nor arthritic change, no soft tissue calcification, and normal alignment. Dr. Williams's conclusion was that Plaintiff had a normal left and right knee exam. Tr. 395-96. Additionally, Dr. Williams reported that an MRI of Plaintiff right knee performed on October 8, 2008, showed a normal right knee. Tr. 397. James Sauer, M.D., reported that a December 19, 2008 CT scan of the cervical spine showed that there was normal sagittal alignment and no fracture; that the posterior elements were intact and normal in their relationships; that no fracture was seen; and that the impression was no acute abnormality. Tr. 417. Dr. Williams reported that a July 22, 2009 radiology examination for lumbar pain showed that Plaintiff had no fracture, mild or early degenerative arthritis of L2 and L3, and "slight increased lumbar lordosis"; that sacroiliac joints were normal; and that, otherwise, the lumbar spine was normal. Tr. 432. See also Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."); Travis, 477 F.3d at 1041 ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."); Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir.2009). In conclusion, the

29

court finds, to the extent that the ALJ did not give controlling weight to Dr. Ash's opinion, that the ALJ's decision is based on substantial evidence and that it is consistent with the Regulations and case law.

### 3.   Dr. Van Pelt:

The court has set forth Dr. Van Pelt's opinion above in detail. Additionally, as discussed above, the ALJ considered Dr. Van Pelt's opinion. While Dr. Van Pelt was not a treating doctor, he was an examining doctor. Moreover, although doctors who treated Plaintiff for physical problems may have prescribed medication for her depression, Dr. Van Pelt is a specialist. "Although a treating physician's opinion is considered to be significant, specialists' opinions are generally afforded more weight." Qualls v. Apfel, 158 F.3d 425, 428 (8th Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(5)). The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (citation omitted).

Additionally, as discussed above, Plaintiff was never hospitalized for a mental condition; Dr. Van Pelt conducted testing; he examined Plaintiff and concluded she had a GAF which indicated only moderate difficulty in social or occupational functioning; and Dr. Van Pelt concluded that test results showed that Plaintiff exaggerated her symptoms. The court finds that the ALJ gave proper weight to Dr. Van Pelt's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

### C.   Plaintiff's RFC:

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in

30

substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

Prior to determining Plaintiff's RFC the ALJ considered the evidence of record, including Plaintiff's testimony and the records and reports of treating, consulting, and examining doctors and other sources. Consistent with Dr. Van Pelt's opinion and the evidence of record, including clinical

31

Case: 2:11-cv-00028-JCH Doc. #: 21 Filed: 03/08/12 Page: 32 of 102 PageID #: 656

test results, the ALJ found that Plaintiff can perform low stress, unskilled jobs, at the light exertion level. The court finds that the ALJ's RFC determination is based on substantial evidence and that it is consistent with the Regulations and case law.

Because the ALJ found that Plaintiff had non-exertional limitations, he solicited the testimony of a VE to determine whether there is work in the national and local economy which Plaintiff can perform. See Robinson, 956 F.2d at 839. Upon posing a hypothetical to the VE, the ALJ was not required to include all of a claimant's limitations, but only those which he found credible. See Martise v. Astrue, 691 F.3d 909, 927(8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir.2006)). The ALJ did so. In response to the ALJ's hypothetical, the VE testified that a person with Plaintiff's RFC could perform her past relevant work as a cashier as it is performed in the national economy.

20 C.F.R. § 404.1560(b)provides:

(3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy

As the court has found that the ALJ's RFC determination is based on substantial evidence and as the VE testified that Plaintiff can perform her past relevant work as a cashier, the court further finds that the ALJ's conclusion that Plaintiff is not disabled is based on substantial evidence.

Additionally, as considered by the ALJ, the VE also testified that a person with Plaintiff's RFC could also work as a ticket seller, bench assembly worker, packer, and office helper. A VE's testimony constitutes substantial evidence when based on a properly phrased hypothetical question.

32

Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir.2004) (citing Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir.1996)). As stated above, the hypothetical which the ALJ posed to the VE included those limitations which the ALJ found credible and it reflected an RFC which was based on substantial evidence. Under such circumstances, the court finds that the VE's testimony that Plaintiff can work as a cashier and that there are other jobs which she can preform is based on substantial evidence. In conclusion, the court finds that the ALJ's decision is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint be **DENIED**; Docs. 1, 17,

**IT IS FURTHER RECOMMENDED** that a separate judgment be entered incorporating this Report and Recommendation.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>8th</u> day of March, 2012.

34